## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**INDEPENDENT RECORDS OF COLORADO SPRINGS, INC.,** a Colorado corporation, and **K1 ROOFING AND RESTORATION, LLC**, a Colorado limited liability company,

      Plaintiffs,

v.

**OHIO SECURITY INSURANCE COMPANY**, a New Hampshire corporation,

      Defendant.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW Plaintiffs Independent Records of Colorado Springs, Inc. and K1 Roofing and Restoration, LLC, (collectively "Plaintiffs"), by and through their attorneys, Furtado Law PC, for their Complaint against the above-named Defendant Ohio Security Insurance Company, and states as follows:

### I.   NATURE OF THE ACTION

1. Plaintiffs bring this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

## II.    PARTIES

2.  Independent Records of Colorado Springs, Inc. ("Plaintiff Independent Records") is a Colorado corporation with its principal place of business at 3030 East Platte Avenue, Colorado Springs, CO 80909.

3.  K1 Roofing and Restoration, LLC ("Plaintiff K1") is a limited liability company with its principal place of business at 4465 Northpark Drive, Suite 200, Colorado Springs, CO 80907 and is authorized do to business in Colorado. Upon information and belief, all members of K1 are residents of Colorado.

4.  Ohio Security Insurance Company ("Defendant") is a foreign corporation with its principal place of business located in Massachusetts but is domiciled in New Hampshire and is authorized to do business in Colorado.

## III. JURISDICTION AND VENUE

5.  Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

6.  Plaintiff Independent Records sought and obtained an insurance policy, Policy No. BZS (16) 56 97 18 77 (hereinafter "the Policy"), from Defendant for commercial policy located at 3020 (hereinafter "Building 3020"), 3030 (hereinafter

"Building 3030") and 3040 (hereinafter "Building 3040") East Platte Avenue, Colorado Springs, CO 80909 (hereinafter collectively "the Property").

7.  On or about August 23, 2016, Plaintiff Independent Records filed its claim for Building 3040 with Defendant for a hailstorm that occurred on July 14, 2016, and Defendant issued Plaintiff Independent Records claim's number 23224337. Plaintiff Independent Records also reported that the HVAC units on Building 3030 were damaged from a May 26, 2016 hailstorm.

8.  On or about September 1, 2016, Plaintiff Independent Records filed its claim for Building 3020 for damaged that occurred from an August 30, 2016 hailstorm. For these claims, Defendant issued claims numbers: 23227287 for Building 3020, 23226015 for Building 3030 and 23224337 for Building 3040. Defendant also assigned its adjuster Jim Shatto to oversee Defendant's investigation of Plaintiff Independent Records' claim

9.  Upon information and belief, shortly after, Defendant hired Joseph Guerra and Kyle Bowell with PT&C/LWG("PTC") to provide an engineering analysis of the damage.

10. On or about September 1, 2016, Plaintiff Independent Records hired Plaintiff K1 as its contractor on the claim. Upon information and belief, Plaintiff K1 subsequently hired United Restoration as a sub-contractor on the claim to perform roofing repairs.

11. On or about September 1, 2016, Plaintiff K1 retained Martin Shields with Shields Engineering Group to inspect the property and provide an engineering analysis of

the damage and proper repairs. On or about September 1, 2016, Mr. Shields inspected the Property for property damage.

12. On or about September 1, 2016, Plaintiff K1 also retained David Draper with DG Draper Consulting, LLC to provide an engineering analysis of the damage to Plaintiff Independent Records' HVAC units from the date of loss.

13. On or about September 7, 2016, Martin Shields sent his engineering report to John Josetti with Plaintiff K1 with the following conclusions regarding damage on Plaintiff Independent Records' roof:

    a. There were numerous factures in the single-ply Duralast membrane requiring removal and replacement of the roofing membrane. In addition, the high moisture content in the roofing assembly prohibits repair of the membrane pursuant to building code.

    b. The asphaltic shingles must be removed and replaced due to hail damage.

    c. With regard to the 3-play ABUR roof covering, all areas with the ballast missing showed numerous factures in the roofing membrane. These fractures warrant replacement of the membrane. Furthermore, the high moisture content found in the roofing assembly prohibits any repairs to the membrane pursuant to code.

14. On or about September 16, 2016, Mr. Draper drafted his engineering report for Building 3020 and concluded that Plaintiff Independent Records' RTU-2 and RTU-3 hvac units must be replaced due to the type of coil fin damage from the date of loss. Therefore, Mr. Draper replacement is required to return the units to pre-loss condition.

15. On or about September 21, 2016, Mr. Draper drafted his second engineering report for Building 3030 and concluded that units RTU-1 and 2 and AC-1 and 2 must be replaced due to the type of coil fin damage from the date of loss. Mr.

Draper also determined that the corrosion protective coating was removed on the hail strike areas on each unit and this coating cannot repaired. Therefore, Mr. Draper recommended replacement of the HVAC units to return the units to pre-loss condition.

16. On or about September 21, 2016, Mr. Draper sent Plaintiff Independent Records his mechanical evaluation reports.

17. Upon information and belief, Plaintiff Independent Records timely sent all of these reports to Defendant for review.

18. On or about November 8, 2016, PTC sent Mr. Shatto a letter that based upon their review of engineering reports and their own site inspection, the covered replacement cost value for damages as $164,472.78 (actual cash value of $121,472.78). Mr. Shatto attached PTC's estimate dated the same day.

19. On or about December 5, 2016, Mr. Shatto sent Plaintiff Independent Records a letter outlining PTC's findings from its October 2015 investigation including the following:

   a. The single-ply thermoplastic roofing membrane at Building 3020 was damaged as a result of hailstone impacts from both recent and historical hailstone impacts with the most probable date of recent hailstone impacts that resulted in damage to the membrane occurring on August 29, 2016.

   b. The laminate asphalt-composition shingle roofing at Building 3030 was damaged as a result of hailstone impacts from recent hailstone impacts with the most probable date of the storm that resulted in damage to the roofing occurring on August 29, 2016.

   c. The gravel-ballasted BUR roofing membrane at Building 3030 was not damaged by hail.

   d. The modified bitumen base flashings at the east and south facing exposures of the parapet walls and raised center area of Building 3030 were damaged as a result of hailstone impacts from recent hailstone

impacts with the most probable date of the storm that resulted in damage to the roofing occurring on August 29, 2016.

e.  The granular-surfaced modified bitumen roofing membrane at Building 3040 was not damaged due to hailstone impacts.

f.  The granule- surfaced roll roofing at Building 3040 was damaged as a result of hailstone impacts with the most probable date of the storm(s) that resulted in damage to the roofing occurring on June 4, 2015 and/or May 21, 2014.

g.  The moisture intrusion into the structure at Building 3020 occurred as a result of both hail damage to the roofing membrane and age-related and/or mechanical distress to the single-ply thermoplastic roofing membrane.

h.  The moisture intrusion into the structure at Building 3030 occurred as a result of age-related deterioration of the modified bitumen and BUR roofing membranes and was not attributable to hail damage.

i.  The moisture intrusion into the structure at Building 3040 occurred as a result of age-related deterioration of the modified bitumen roofing and was not attributable to hail damage . . .

j.  Building 3020's RTU-2, Building 3020's RTU-3, Building 3030's RTU- 1, Building 3030's AC-1, and Building 3030's AC-2 had total deformed areas of 60% or greater on their condenser coils, which indicates that deformation to the heat transfer fins had likely resulted in a drop in functional performance. PT&C I LWG recommends replacing the condenser coils for Building 3020's RTU-2, Building 3020's RTU-3, Building 3030's RTU 1, Building 3030's AC-1, and Building 3030's AC-2.

k.  Building 3030's RTU-2 was not functionally affected by hailstone impact deformation but replacing the condenser coil could be performed for cosmetic restoration only.

l.  Circular indentations consistent with hail stone impact deformation were visible on the top cabinet panels of Building 3020's RTU-1, Building 3020's RTU-2, and Building 3030's RTU-2, and Building 3030's RTU-3. Although the indentations are not functional damage, the top cabinet covers of these units could be replaced to restore the units cosmetically.

20. Upon information and belief, Plaintiff Independent Records' Policy does not exclude coverage for cosmetic damage.

21. Upon information and belief, all damage on the condenser coils is functional in nature and replacement is necessary to return the units to pre-loss conditions.

22. Upon information and belief, pursuant to the above findings, Mr. Shatto applied coverage on the claim as follows:

   a. Regarding Building 3020, the single ply roof membrane, cap flashing, curb flashing, parapet flashing, roof hatch cover, condenser coils, and paint on wood siding was damaged by the August 8, 29, 2016 hailstorm.  However, the membrane was also damaged by wear and tear and mechanical distress. Based upon the observed damage, PIE engineering determined the replacement cost value for this building at $104,278.78 (ACV $64,416.78).

   b. Regarding Building 3030, the laminated shingles, vent caps, cap flashing, east and south facing parapet flashings, metal fascia, and condenser coils were damaged by the August 28, 2016 hailstorm. However, the gravel ballasted roofing membrane was not damaged by hail but instead by wear and tear damage over time.

   c. Regarding Building 3040, Mr. Shatto determined the date of loss for observed damages of either June 4, 2015 or May 21, 2014.

   d. Mr. Shatto then stated that the covered loss on this roof was only $806.87.

23. Upon information and belief, Mr. Shatto then summarized the loss with a replacement cost value of $163,611.91.

24. Upon information and belief, Mr. Shatto's coverage decision is deficient as follows:

   a. Mr. Shatto unreasonably failed to add general conditions to this estimate amount.

   b. Mr. Shatto's repair methodology on Plaintiff Independent Records' HVAC unit condenser coils also does not return the units to pre-loss conditions and is an unreasonable denial of covered benefits.

    c. Mr. Shatto's date of loss determination is incorrect because it is based upon faulty information about how hail size correlates to property damage. There are other factors that Mr. Shatto should have considered including how the aged condition of roof prior to the loss date made the roof more susceptible to damage from smaller sized hail.

25. On or about January 31, 2017, Plaintiff Independent Records' previous counsel Christopher Drake sent Mr. Shatto a letter requesting Defendant release undisputed actual cash value on the claim immediately so that work can commence at the Property. Mr. Drake also questioned Mr. Shatto's basis for determining that a sworn proof of loss was required to be paid on an ACV basis.

26. On or about February 13, 2017, Plaintiff Independent Records emailed Mr. Shatto requesting that it release undisputed ACV.

27. On or about February 20, 2017, Mr. Josetti drafted an estimate for repairs with a replacement cost value of $472,357.66 ($450,975.56 actual cash value). Upon information and belief, Plaintiff timely disclosed this estimate to Defendant.

28. On or about March 14, 2017, Mr. Shields re-inspected the property regarding damage to the perimeter metal coping on Building 3030.

29. On or about March 20, 2017, Mr. Shields sent his second report to Plaintiff Independent Records indicating that the perimeter metal coping on the Property was hail damaged and must be removed and replaced to restore the metal to pre-loss condition. Upon information and belief, this report was timely disclosed to Defendant.

30. On or about March 20, 2017, Mr. Shatto sent Mr. Drake a letter agreeing to pay undisputed actual cash value on Defendant's estimate in the amount of $118,353.39 without any preconditions to payment. Upon information and belief, Mr. Shatto's delayed response to Mr. Drake is further evidence of unreasonable delay on covered benefits from months before.

31. On or about March 22, 2017, Plaintiff Independent Records hired Matt Latham with Crossroad Claims Consulting as its public adjuster on the claim.

32. On or about June 14, 2017, Plaintiff Independent Records executed a proof of loss for advance payment on the claim in the amount of $118,353.39. Upon information and belief, Mr. Latham submitted this proof of loss to Defendant.

33. On or about November 8, 2017, Mark Rothbauer with K1 drafted his estimate for repairs with a replacement cost value of $523,246.78 (actual cash value after deductible of $499,445.20). Mr. Rothbauer also drafted and sent to Plaintiff Independent Records his interim invoice in the claim of $130,364.93. The invoice also acknowledged previous payments from Plaintiff Independent Records of $121,714.26.

34. Upon information and belief, on or about November 8, 2017, Mr. Latham sent the above estimate to Defendant.

35. On or about January 30, 2018, Mr. Josetti sent Mr. Shatto an email demanding payment on his invoice from 90 days prior. Mr. Josetti specifically questioned Mr. Shatto's consultant who misstated that HVAC curbs were never completed. Mr. Josetti also questioned how Defendant could not verify the repairs were

completed for three months when the invoice was submitted to Defendant in early November 2017.

36. On or about February 4, 2018, Defendant's building consultant Steve Neyers with Envista Forensics drafted a revised estimate for repairs with a replacement cost value of $164,472.78 (actual cash value of $152,803.86).

37. On or about February 5, 2018, Mr. Shatto sent Plaintiff Independent Records a letter that it was issuing an advance payment on the claim in the amount of $28,589.62. Mr. Shatto stated the payment was related to Building 3040 and that Defendant had confirmed the roof covering was likely damaged by hail from a June 4, 2015 or May 21, 2014 hailstorm. Upon information and belief, Defendant's advance payment is actually a delayed payment that was owed since December 5, 2016.

38. On or about February 5, 2018, Mr. Shatto emailed Mr. Latham an email attaching his letter to the Plaintiff Independent Records with Defendant's February 4, 2018 estimate.

39. On or about March 20, 2018, Mr. Shatto sent Mr. Latham Defendants' revised estimate correcting recoverable depreciation. Upon information and belief, Mr. Shatto's final estimate still fails to account for covered benefits under the Policy. Mr. Shatto's failure to consider relevant expert reports and other documents in the claim is an unreasonable denial of covered benefits.

40. On or about May 8, 2018, Mr. Shatto sent Mr. Latham a letter that Defendant was releasing recoverable depreciation on the claim based upon Defendant's estimate in the amount of $2,499.98.

41. On or about June 1, 2018, Plaintiff Independent Records executed an assignment of benefits for its breach of contract claim only with Plaintiff K1.

42. Although Plaintiffs provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiffs claims for benefits by failing to conduct a reasonable investigation of Plaintiffs' damages and failing to properly adjust the loss with all available information.

43. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiffs' claims for benefits due and owing under the Policy, Plaintiffs have incurred and continues to incur damages.

### V.    FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

44. Plaintiffs incorporate the allegations contained in the paragraphs above as if fully set forth herein.

45. The Policy creates a contract of insurance.

46. By its actions, as described above, Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiffs on the claim and failing to pay covered benefits under the Policy.

47. As a direct and proximate result of said breach, the Plaintiffs are entitled to damages in an amount to be determined at trial.

### VI.    SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

48. Plaintiffs incorporate the allegations contained in the paragraphs above as if fully set forth herein.

49. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

50. Plaintiff Independent Records is a first-party claimant under C.R.S. §10-3-1115.

51. Defendant has denied the Plaintiff Independent Records' claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

52. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

53. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff Independent Records bring this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract including its breach of the appraisal provision;

2. All unpaid covered benefits owed under the party;

3. Two times the amount of all covered benefits under the Policy;

4. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

5. Pre- and post-judgment interest; and

6.      For such other and further relief as this Court may deem just.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 5th day of July 2018.

FURTADO LAW PC

*/s/ Nathanael Archuleta*
David Furtado, Esq.
Nathanael Archuleta, Esq.
Katherine Goodrich, Esq.
Furtado Law PC
3773 Cherry Creek North Drive,
Ste. 755
Denver, CO 80209
Telephone: (303) 755-2929
Email:        Dfurtado@furtadolaw.com
              Nathanael@furtadolaw.com
              katie@furtadolaw.com
Attorneys for Plaintiffs